UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BONNIE DUDLEY,

        Plaintiff,

    v.                                      Case No. 16-C-1721

NANCY A. BERRYHILL,

        Defendant.

## DECISION AND ORDER

This is an action for judicial review of a decision of the Commissioner of Social Security denying Plaintiff Bonnie Dudley's application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Dudley contends that the Administrative Law Judge (ALJ) erred by failing to properly account for limitations on her ability to maintain concentration, persistence, and pace when articulating her Residual Functional Capacity (RFC) and by failing to assign appropriate weight to the opinion of an examining psychologist. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

Plaintiff filed her application for disability and disability insurance benefits (DIB) on May 9, 2013, alleging that she has been disabled since July 24, 2012, as a result of anxiety, panic attacks, depression, attention-deficit disorder, arthritis, chronic back pain, and pain in her hip and leg. R. 77. At the time of her application, Plaintiff was 47 years old and lived in Gillett, Wisconsin, with her husband, daughter, and four granddaughters. R. 46. Her last insured date for purposes of DIB was December 31, 2013. R. 45. Prior to 2012, she worked in nursing homes, primarily as a cafeteria

cook but also periodically cleaning dishes or doing laundry and other housekeeping. R. 48, 63–65.

Her application was denied both initially in October 2013 and on reconsideration in April 2014.

R. 91, 108. She requested a hearing before an ALJ, and ALJ Edward Studzinski held a hearing on

October 9, 2015. R. 41, 156–57.

Both Plaintiff, who was represented by counsel, and a vocational expert (VE) testified at the

hearing. Plaintiff testified that she lived in Gillett, Wisconsin in a mobile home with her husband,

who was receiving disability, her 31-year-old-daughter, and four grandchildren. She was five feet,

two inches tall and weighed 190 pounds, though her normal weight was 145 pounds. She had a high

school diploma and a technical college degree in dietary management. Plaintiff testified that she last

worked in 2012 doing cooking, dishes, and laundry at a nursing home, but the last substantial gainful

employment she had was in 2002. R. 46–48.

Plaintiff testified that she was unable to work because of pain and anxiety. She testified that

she had pain all over depending on what she was doing. She had pain in her lower back when she

worked with her arms and had constant pain in her legs, hips, and upper back that worsened with

activity. On a scale of one to ten, with ten meaning she needed to be at the hospital, she said her

pain was at an eight. She testified she had been treating her pain with Vicodin for about three years

which was prescribed by Dr. Asma, who she was seeing with the help of Medical Assistance. R.

49–50. She had previously tried physical therapy and a chiropractor, but had declined injections

because she'd "heard bad things about injections." R. 51.

Plaintiff testified she could sit for only 30 minutes before her legs would fall asleep and she

would have to readjust to lessen the pain. The pain was always there, however, and she testified she

normally would not sit for 30 minutes. She testified she could stand for 15 minutes and then had to

sit down to take the pressure off her back. She estimated the total amount of time she could stand in an eight-hour day at two hours, but would probably be unable to do even that five days in a row. She estimated she could lift a gallon of milk, but not if she had to do it off and on for two hours. If she attempted to exceed those limitations she would hurt more. R. 51–53. During the course of a day, Plaintiff testified that she would lie down off and on for two hours over an eight hour period. She would rotate between sitting, standing, and lying down all day long, but seldom sleep. Even with Vicodin, her pain remained at a level eight. She was unable to bend down to tie her shoes or pick something up from the floor, though she could pick things up if she crouched. She also had difficulty reaching with her arms. R. 54–55.

For her anxiety, Plaintiff testified that she took Alprazolam, Zoloft, and Adderall. She said she had difficulty focusing or concentrating, and comprehending what she was reading. She had only basis computer skills. Everything made her anxious—leaving the house, driving, people. She would go grocery shopping with her husband but only at certain times of the day. She seldom drove other than to the grocery store or to pick up her grandson. When she went to meet her mother in De Pere, she said her husband drove. R. 56–57. She had panic attacks a couple times a week that could last more than thirty minutes. R. 59.

Plaintiff testified she was able to cook a meal and make the kids cereal for breakfast. She seldom cleaned because it was difficult to work with her arms in front of her. Her main activity or entertainment was watching TV, though she also tried to attend her grandchildren's events at school. No doctor, however, had ever limited her activity for medical reasons. R. 60–61.

In an eleven page decision dated December 10, 2015, the ALJ determined that Plaintiff was not disabled. R. 22–31. The ALJ's decision followed the five-step sequential process for

determining disability prescribed by the Social Security Administration (SSA). At step one, the ALJ

concluded that Plaintiff had not engaged in substantial gainful activity between July 24, 2012, her

alleged onset date, and December 31, 2013, her date last insured. R. 24. At step two, the ALJ

concluded that Plaintiff had five severe impairments during the period of time under review: anxiety

disorder, depression, attention deficit hyperactivity disorder (ADHD), degenerative disc disease, and

degenerative joint disease. R. 24 At step three, the ALJ concluded that none of Plaintiff's severe

impairments met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part

404, Subpart P, Appendix 1. R. 24.

Before proceeding to step four, the ALJ assessed Plaintiff's RFC and found that she is

capable of "perform[ing] a range of light work" as defined in 20 C.F.R. § 404.1567(b), subject to

a lengthy set of limitations:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10
> pounds frequently, and has no limitations in her ability to sit, stand or walk
> throughout an 8-hour workday. The claimant needs to alternate her position
> between sitting, standing, and walking for no more than five minutes out of every
> hour. While doing so, she would not need to be off task. The claimant can
> occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance,
> crouch and crawl, but [she] can never climb ladders, ropes or scaffolds. The claimant
> is limited to working in non-hazardous environments, i.e., no driving at work,
> operating moving machinery, working at unprotected heights or around exposed
> flames and unguarded large bodies of water, and [she] should avoid concentrated
> exposure to unguarded hazardous machinery. The claimant is further limited to
> simple, routine and repetitive tasks, work involving no more than simple decision-
> making, no more than occasional and minor changes in the work setting, and work
> requiring the exercise of only simple judgment. She can tolerate an average
> production pace, but not above average or variable pace. She is further precluded
> from work involving direct public service, in person or over the phone, although the
> claimant can tolerate brief and superficial interaction with the public, which is
> incidental to her primary job duties. She is unable to work in crowded, hectic
> environments. The claimant can tolerate brief and superficial interaction with
> supervisors and co-workers, but is not to engage in tandem tasks.

4

R. 26. In arriving at this RFC, the ALJ found Plaintiff's testimony and statements concerning the intensity, persistence, and limiting effects of her pain and other symptoms less than credible. The ALJ noted that "[w]hile medical records including examination observations and findings, and prescribed treatment, support the existence of medically determinable impairments, they do not document conditions which could reasonably be expected to give rise to the degree of limitation alleged." R. 27.

Following this statement of Dudley's RFC, the ALJ found at step four that Dudley would not be capable of performing her past relevant work as a cafeteria cook. R. 29. This determination relied on the VE's characterization of Dudley's previous work as performed at the medium exertional level. R. 29–30. At step five, however, the ALJ found that as of December 31, 2013, Dudley was capable of performing other jobs that exist in significant numbers in the national economy. R. 30. Relying on further testimony from the VE, the ALJ found that Dudley is capable of performing work as an address clerk, account clerk, or bench sorter, all of which are sedentary positions. R. 30–31. Consequently, the ALJ determined that Dudley is not disabled.

## LEGAL STANDARD

The statute authorizing judicial review of decisions of the Commissioner of Social Security states that the findings of the Commissioner "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 404 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the

conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Plaintiff offers two reasons why this court should reverse the ALJ's decision and remand for further consideration. She does not challenge the ALJ's finding that despite her allegations of almost constant severe and disabling pain from her physical impairments, she retained the capacity to perform light work. Instead, she argues, first, that the ALJ failed to properly account for limitations on her ability to maintain concentration, persistence, and pace due to her mental impairments when formulating her RFC and when posing the hypothetical to the VE. Second, she argues that the ALJ failed to assign weight to the opinion of Dr. Sandra King, a psychologist who examined her. Neither basis warrants reversal.

## A. Concentration, Persistence, and Pace in the RFC and Hypothetical

Plaintiff's primary argument is that the ALJ's RFC formulation and hypothetical posed to the VE, which were essentially the same, failed to adequately account for the ALJ's finding that she

experiences moderate limitations on her ability to maintain concentration, persistence, and pace (CPP). Pl.'s Br., ECF No. 15 at 11–21. For purposes of this argument, Plaintiff is not challenging the ALJ's assessment of the medical sources and other evidence he evaluated to arrive at the RFC. His argument instead is that having found that Plaintiff had moderate difficulties in CPP, the ALJ erred in translating this limitation into the RFC he formulated. As Plaintiff's brief demonstrates, this is a common, and unfortunately confusing, issue in Social Security disability appeals. What does it mean to say that a claimant has moderate difficulties in her ability to maintain concentration, persistence, or pace?

A finding that a claimant has moderate difficulties with regard to concentration, persistence or pace is made in almost every case involving a severe mental impairment. "Concentration, persistence or pace" is one of the four broad functional areas the SSA rates, using its "special technique," to determine whether a claimant's alleged mental impairment meets or medically equals the criteria for presumptive disability under one of the mental disorders in the SSA's Listings of Impairments, and if not, whether or not it is nevertheless severe. 20 C.F.R. § 404.1520a. The other three broad functional areas are activities of daily living, social functioning, and episodes of decompensation. *Id.* § 404.1520a(c)(3). The first three are rated on a five-point scale: none, mild, moderate, marked, and extreme. The fourth broad functional area, episodes of decompensation, is rated on a four-point scale: none, one or two, three, four or more. *Id.* § 404.1520a(c)(4). If the SSA rates the first three broad functional areas as "none" or "mild " and "none" in the fourth area, it generally concludes that the impairment is not severe. *Id.* § 404.1520a(d)(1). If not, then the impairment is considered severe and the SSA determines whether it meets or is equivalent in severity to a mental impairment in the SSA's Listing of Impairments, 20 C.F.R. Part 404, Subpart P,

Appendix 1, 12.01. If the mental impairment is severe, but does not meet or equal in severity any listing, the SSA then assesses the mental RFC. 20 C.F.R. § 404.1520a(d)(3).

SSA adjudicators are told that the limitations they identify using the "psychiatric review technique" are "not an RFC assessment" but are instead "used to rate the severity of the mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). As the Ruling makes clear, "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." *Id.* Thus, it is to the more detailed assessment of the various functions set forth in the Mental Residual Functional Capacity Assessment (MRFCA) form, as well as all the other evidence in the record bearing on the issue, that the ALJs look to in formulating a claimant's mental RFC.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004)). In particular, the Seventh Circuit has found fault when the ALJ translates a medical source's finding of moderate limitations in concentration, persistence, or pace into an RFC limiting the claimant to simple, routine, and repetitive tasks. *See O'Connor–Spinner*, 627 F.3d at 620 (rejecting argument that "an ALJ may account generally for moderate limitations on concentration, persistence or pace by restricting the hypothetical to unskilled work"). But where a medical source, whose opinion the ALJ reasonably accords great weight, translates his own finding that the claimant may have moderate difficulties in

one of the broad areas of functioning into an ultimate conclusion that the claimant can nevertheless perform simple, routine, and repetitive work, the ALJ does not err. Thus, in *Johansen v. Barnhart*, the court held that the ALJ did not err in finding that despite the plaintiff's moderate limitations in his ability to maintain a regular schedule and attendance, and in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, he could still perform repetitive, low-stress work:

> The ALJ did not err in relying on Dr. Matkom's assessment of Johansen's mental RFC. Both Dr. Matkom and Dr. Berney found that Johansen was essentially "moderately limited" in his ability to maintain a regular schedule and attendance, and in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. Dr. Matkom, however, went further and translated those findings into a specific RFC assessment, concluding that Johansen could still perform low-stress, repetitive work. Dr. Berney, on the other hand, did not make an RFC assessment (nor did state-agency physician Ingison). Thus, because Dr. Matkom was the only medical expert who made an RFC determination, the ALJ reasonably relied upon his opinion in formulating the hypothetical to present to Goldsmith.

314 F.3d 283, 288–89 (7th Cir. 2002); *see also Capman v. Colvin*, 617 F. App'x 575, 578–79 (7th Cir. 2015) (holding ALJ did not err in limiting plaintiff "to simple, routine tasks that did not require working with the public or in close proximity or cooperation with others," notwithstanding finding moderate limitations in CPP).

Similarly in this case, state agency consultant Dr. Chang-Wuk Kang reviewed Dudley's mental RFC at the initial level. R. 86–88. With regard to sub-categories pertaining to her ability to maintain concentration, persistence, and pace, Dr. Kang opined that she is moderately limited in her ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, and complete a normal workday and workweek at a consistent pace without an unreasonable frequency and length of rest

periods due to psychological symptoms. R. 87. Dr. Kang nevertheless concluded in his narrative description of Plaintiff's mental RFC that even though she may have some difficulty in focusing on a detailed task, "she can maintain concentration and persistence to complete workdays and workweeks in performance of simple repetitive tasks." R. 87. The ALJ assigned significant weight to this opinion. R. 29.

State agency consultant Dr. David Biscardi also completed a MRFCA at the reconsideration level. R. 104–05. Like Dr. Kang, Dr. Biscardi found that Dudley is moderately limited in her ability to maintain attention and concentration for extended periods and in her ability to complete a normal workday and workweek at a consistent pace without an unreasonable frequency and length of rest periods due to psychological symptoms. R. 104. Despite these difficulties, however, he concluded in his narrative description:

> [Claimant] retains the capacity to understand, remember, carry out and sustain performance of 1–3 step tasks (but would become overwhelmed if the procedures were more complicated), complete a normal workday, interact briefly/superficially with coworkers/supervisors and adapt to changes/stressors associated with simple routine competitive work activities.

R. 105. The ALJ also assigned significant weight to this opinion. R. 29.

Plaintiff cites *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), and *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014), as support for her contention that the ALJ in this case erred in her formulation of the RFC. In *Varga*, the ALJ found that the plaintiff had moderate limitations in CPP and in various functional areas within that broader category, but then adopted an RFC that only limited her to "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements." *Id.* at 811–13. Similarly in *Yurt*, the ALJ found that the claimant had moderate

difficulties in CPP, but then accommodated that difficulty by simply limiting him to unskilled work. 758 F.3d at 858. In both cases, the Commissioner's decisions were reversed.

Plaintiff seems to read *Varga*, and *Yurt* as well, to say that an RFC limiting a claimant to simple, routine, repetitive work is never appropriate when moderate difficulties in CPP are found. But this is not what these cases say. In *Yurt*, the court declined to adopt the blanket rule, based on the instructions in the SSA's MRFCA form, that the boxes checked by the reviewing psychologist in the worksheet section of the form do not constitute the RFC assessment, which the Third Circuit had applied in *Smith v. Commissioner of Social Security*, 631 F.3d 632, 637 (3d Cir. 2010). *Yurt*, 758 F.3d at 858. But *Yurt* did not say that the worksheet observations always control over the doctor's narrative RFC assessment.

And *Varga* explicitly recognized that "in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." 794 F.3d at 816 (citing *Johansen*, 314 F.3d at 286). The problem in *Varga* was that the doctor's narrative RFC was missing. Under those circumstances, the court held that it was error not to rely on the worksheet observations. *Id.* But where the examiner's narrative is included and is not inconsistent with the worksheet findings, the ALJ may reasonably rely on it. *See also Capman*, 617 F. App'x at 579 ("So the ALJ may reasonably rely on the examiner's narrative in Section III, at least where it is not inconsistent with the findings in the Section I worksheet.").

The recent case of *Lanigan v. Berryhill*, cited by Plaintiff in her reply, does not change the law on this issue. 865 F.3d 558 (7th Cir. 2017). *Lanigan* recounted that the court had said that "an ALJ must explicitly address those [CPP] limitations in the hypothetical unless one of three exceptions

11

applies: (1) the vocational expert was independently familiar with the claimant's medical file; (2) the hypothetical adequately apprised the vocational expert of the claimant's underlying mental conditions; or (3) the hypothetical otherwise accounted for the limitations using different terminology." *Id.* at 565 (citing *O'Connor–Spinner*, 627 F.3d at 619–20). The court found that none of the three exceptions applied in that case. *Id.* Here, by contrast and as explained above, the same medical sources that found Plaintiff had moderate difficulties in CPP translated that limitation into a mental RFC that was even less generous than the RFC the ALJ adopted.

Although the electronic forms used by state agency consultants for assessing Plaintiff's mental impairments in this case are not the same as those used in *Yurt* and *Varga*, the law has not changed. A claimant's RFC is "the most [the claimant] *can* still do despite [the claimant's] limitations," 20 C.F.R. § 404.1545(a)(1) (emphasis added), not what she can do with ease or without moderate difficulty. This is particularly important to note when one considers what the term "moderate" is intended to mean in this context. The recent rule revisions by the SSA clarify that a "moderate" limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." SSA, Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164 (Sept. 26, 2016) (effective January 17, 2017). Although the revised regulations became effective after the hearing was held in this case, the definitions "are consistent with how [SSA's] adjudicators have understood and used those words in [SSA's] program since [SSA] first introduced the rating scale in 1985." 81 Fed. Reg. 66147. As a result, the definitions set forth in the new rules "do not represent a departure from prior policy." *Id.*; *see also Capman*, 617 F. App'x at 579 ("A moderate limitation is not a complete impairment." (citing

*Roberson v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007))). Thus, moderate difficulty does not mean that the claimant is unable to perform the activity or task.

It is also important to note that where, as here, a case proceeds to a hearing, it is the responsibility of the ALJ, not the medical experts, to assess the claimant's RFC. 20 C.F.R. § 404.1546(c). Although the ALJ must consider opinions from medical sources in assessing issues such as a claimant's RFC, "the final responsibility for deciding these issues is reserved to the Commissioner." *Id.* § 404.1527(d)(2).

That is what the ALJ did here. As the Commissioner notes, "the ALJ included a robust set of mental limitations that virtually mirrored (and exceeded) the opinions of the state-agency doctors, the only sources to opine on the issue of Plaintiff's functional work-related limitations." Commr.'s Br., ECF No. 15 at 8. Notwithstanding his finding that Plaintiff had moderate difficulties in CPP, a finding based on the opinions of the state agency psychologists, the ALJ found that Plaintiff could perform work that fell within the long and detailed RFC set forth in his decision (R. 26), an RFC even more limited than the same medical sources thought her capable. In doing so, the ALJ noted that he "afforded the claimant considerable benefit of the doubt, and included additional limitations reflecting evidence submitted after these opinions." R. 29. Plaintiff's insistence that this court find that the ALJ's RFC fails to capture the limitations of a person with moderate difficulties in CPP is an invitation for the court to both "play doctor" and usurp the function of the ALJ. Neither is allowed under the law governing judicial review of the Commissioner's decisions. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Finally, it is worth noting that Plaintiff does not suggest any alternative RFC that she believes would have more accurately conveyed to the VE and a reviewing court what "moderate difficulties" in CPP really means. The phrase is not self-defining, and it seems doubtful that a VE would find a hypothetical with the limitation "moderate difficulties in CPP" very useful in attempting to name jobs that a claimant with such an RFC could perform. If the ALJ may not rely on the medical sources that offer opinions on what it means, the issue will likely continue to be a troubling one in social security disability cases. Clarity would greatly help both the claimants and the Commissioner.

## B. Dr. King's Opinion

Plaintiff also argues that the ALJ erred by failing to expressly assign weight to the opinion of Dr. Sandra King, who examined Plaintiff in October 2013. R. 490–93. Dr. King's written report included a statement regarding Plaintiff's capacity to work:

> Ms. Dudley is not expected to have difficulties understanding directions, but she may have difficulty remembering and carrying out directions due to lack of concentrations/distractibility. She is predicted to have mild difficulties in responding appropriately to supervisors and co-workers due to irritability. Her ability to maintain concentration and attention appear to be mildly impaired. Ms. Dudley is expected to have moderate to severe difficulties withstanding routine work stress and adapting to change.

R. 493. After briefly summarizing Dr. King's report and noting that Dr. King "assessed the claimant with major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and ADHD," the ALJ explained that he "assigned the claimant functional limitations to accommodate these conditions." R. 28.

"An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all relevant evidence.'" *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (per curiam) (quoting *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000)). Furthermore, "[a]n ALJ can

reject an examining physician's opinion only for reasons supported by substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Plaintiff takes particular issue with the ALJ's alleged rejection of Dr. King's opinion that Plaintiff "is expected to have moderate to severe difficulties withstanding routine work stress and adapting to change." R. 493.

A close examination of the RFC, however, reveals that, far from selectively ignoring Dr. King's opinions, the ALJ incorporated them into the RFC, as he stated he did in his decision. Plaintiff primarily focuses on Dr. King's opinion that she will have "moderate to severe difficulties withstanding routine work stress and adapting to change." R. 493. The RFC is most obviously consistent with Dr. King's opinion regarding Plaintiff's ability to adapt to change, as it limits her to "no more than occasional and minor changes in the work setting." R. 26. Although the RFC does not expressly limit Plaintiff to a certain degree of stress, in its entirety it is clearly directed at minimizing her stress by limiting her to "simple, routine and repetitive tasks," "work involving no more than simple decision-making," "work requiring the exercise of only simple judgment," as well as precluding her from public-facing work, crowded or hectic environments, and more than brief or superficial interactions with supervisors and co-workers. R. 26. What is more, these limitations that would, collectively, minimize work stress also speak to other individual opinions that Dr. King expressed concerning Plaintiff's limited abilities to carry out directions, interact with co-workers, and maintain concentration and attention. The ALJ's opinion does not expressly assign a "weight" to Dr. King's opinion, but it is clear that the ALJ did follow through on his statement that when formulating the RFC he would accommodate the limitations identified by Dr. King. Plaintiff's argument that the ALJ disregarded Dr. King's opinion therefore fails.

## CONCLUSION

For the reasons given above, the Plaintiff's motion for summary judgment is denied, and the decision of the Commissioner is **AFFIRMED**.  The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** this 5th day of March, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court